*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MCCALL, Minors.

UNPUBLISHED
March 21, 2024

No. 366031
Wayne Circuit Court
Family Division
LC No. 2008-478380-NA

Before: GADOLA, C.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Respondent-mother appeals by delayed leave granted the trial court's order terminating her parental rights to seven of her children, ASM1, ASM2, ASM3, JSM, MSM, SMM, and SRM, pursuant to MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j). For the reasons set forth in this opinion, we affirm.[1]

Respondent has a lengthy history of involvement with Children's Protective Services ("CPS") and prior court proceedings involving her children. Petitioner, the Department of Health and Human Services ("DHHS"), initiated this proceeding in October 2016 and requested termination of respondent's parental rights at the initial dispositional hearing. The petition alleged that respondent has a history of mental health issues, that several of respondent's children were found with visible injuries on their bodies, and that respondent's home lacked food and proper sleeping arrangements for the children. In particular, the home had no bedding, there was a large pile of trash in the middle of the living room floor, two of the children were sleeping next to the pile of trash, there was no food in the cupboards or refrigerator, and the home was infested with flies. In February 2017, respondent entered a plea of admission to the allegations in the petition to allow the court to exercise jurisdiction over the children and also entered a plea to the existence of statutory grounds for termination. Following a contested best-interest hearing, the court declined to terminate respondent's parental rights, finding that termination was not in the

---

[1] The trial court also terminated the parental rights of R. Sinegal, the father of JSM and SRM, A. Smith, the father of ASM1, ASM2, ASM3, and J. Guzmanchang, the father of MSM and SMM. None of the fathers are parties to this appeal.

children's best interests. Respondent was provided with a treatment plan and permitted to participate in services.

In October 2018, petitioner filed a supplemental petition that again requested termination of respondent's parental rights. Following a hearing that concluded in June 2019, the court found that there were statutory grounds to terminate respondent's parental rights, but again found that termination of respondent's parental rights was not in the children's best interests. Thereafter, in August 2019, the court instructed petitioner to modify respondent's treatment plan to include services to address her low cognitive function.

Respondent was provided with additional services, but eventually stopped participating in services, ceased contact with petitioner, and last visited her children in June 2021. Consequently, petitioner filed another supplemental petition requesting termination of respondent's parental rights. Following a hearing that concluded in April 2022, the trial court found that statutory grounds for termination were established under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j), and that termination of respondent's parental rights was in the children's best interests.

## I. STATUTORY GROUNDS FOR TERMINATION

Respondent first argues that the court erred by finding that statutory grounds for termination were established by clear and convincing evidence.

This Court reviews for clear error a trial court's finding whether clear and convincing evidence supported a statutory ground for termination under MCL 712A.19b(3). *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. *Id*.

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j), which permit termination of parental rights under the following circumstances:

> (a) The child has been deserted under either of the following circumstances:
>
> * * *
>
> (*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age

-2-

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

With regard to all seven children, clear and convincing evidence established that respondent had deserted the children for 91 days or more without seeking custody during that time. MCL 712A.19b(3)(a)(*ii*). In particular, the evidence at the termination hearing, which concluded in April 2022, indicated that respondent had not visited or had any contact with any of her children since June 2021. Further, she did not appear for the termination hearing, she ceased contact with the caseworkers, and DHHS staff did not know her whereabouts, despite efforts to contact or locate her at last known phone numbers and addresses, homeless shelters, local hospitals, in prison, and on social media.

The record also amply supports the trial court's reliance on MCL 712A.19b(3)(c)(*i*). The conditions that led to the children's removal in October 2016 were respondent's untreated mental health issues, the discovery of unexplained injuries on the children's bodies, and the deplorable condition of respondent's home, which had no bedding, a large pile of trash in the middle of the living room floor, no food in the cupboards or refrigerator, and was infested with flies. By the conclusion of the proceedings 5½ years later, respondent had not rectified these conditions and had not demonstrated substantial benefit from her participation in services. Indeed, by 2021, she was not participating in her individual and family therapy, and she stopped visiting the children. When the termination hearing concluded in April 2022, she had not visited her children since June 2021, and her current whereabouts were unknown. Clear and convincing evidence supports the trial court's finding that the conditions that led to the adjudication continued to exist and were not reasonably likely to be rectified within a reasonable period of time, thereby supporting termination under MCL 712A.19b(3)(c)(*i*).

Similarly, respondent's failure to fully participate in and benefit from the services offered is evidence that she is unable to provide proper care and custody for her children. The caseworker testified that respondent was first presented with a treatment plan when the court took jurisdiction in February 2017. The caseworker explained that respondent failed to maintain consistent contact

with DHHS, and the last time she visited her children was in June 2021. Although respondent completed parenting classes in 2017, she did not benefit from the classes and had to be re-referred for parenting classes in 2019, 2021, and 2022. She never completed these later classes because she was "closed out" for lack of participation or her inability to follow through with the service.

Respondent participated in both psychological and psychiatric evaluations, and was diagnosed with schizophrenia, anxiety, and depressive disorders. When respondent was re-referred for additional psychiatric and psychological evaluations in November 2017, she did not complete those evaluations. Respondent was referred for individual and family therapy more than once, but she was terminated from those services for nonattendance or failure to follow through with the initial intake appointments. Therapy was a necessary component of respondent's treatment plan because of her mental health issues, which was a primary reason the children were taken into care in the first place. Because of domestic violence and anger-management concerns that arose because of respondent's involvement in altercations with the fathers and caregivers of her children and with DHHS staff, respondent was also referred for domestic violence and anger-management counseling, but she refused to participate in those services. The caseworker could not determine if respondent had suitable housing at the time of the termination hearing because her whereabouts were unknown. Throughout the pendency of the lower court proceedings, respondent was offered more than 600 visits with her children, but she only visited them 26 times.

Therefore, clear and convincing evidence also supports the trial court's reliance on MCL 712A.19b(3)(g). *In re Kaczkowski*, 325 Mich App 69, 77; 924 NW2d 1 (2018). Likewise, respondent's failure to comply with the requirements of her treatment plan is evidence that her children were reasonably likely to be harmed if returned to her care. *Id*. Accordingly, the trial court did not clearly err by finding that clear and convincing evidence supported termination of respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (g), and (j).[2] *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

## II. REASONABLE EFFORTS TOWARD REUNIFICATION

Respondent next argues that petitioner failed to make reasonable efforts to reunify her with her children because it did not provide specialized services to address her low cognitive level and, therefore, termination of her parental rights was not warranted.

Although respondent claims that she preserved this issue by raising it during her closing argument at the termination hearing, a respondent must timely object to the adequacy of services when services are offered to preserve an argument that DHHS failed to make reasonable efforts toward reunification. *In re Atchley*, 341 Mich App 332, 337-338; 990 NW2d 685 (2022); see also

---

[2] Although the trial court also relied on MCL 712A.19b(3)(c)(*ii*), the court did not identify what "other conditions" existed to cause the children to come within its jurisdiction. However, because clear and convincing evidence supports termination of respondent's parental rights under MCL 712A.19b(3)(a)(*ii*), (c)(*i*), (g), and (j), any error in relying on § 19b(3)(c)(*ii*) as an additional statutory ground for termination is harmless. *In re Foster*, 285 Mich App 630, 633; 776 NW2d 415 (2009).

*In re MJC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365616); slip op at 2. Because there was no objection to the adequacy of services during the time services were offered, this issue is unpreserved. Therefore, we review this issue for plain error affecting respondent's substantial rights. *Id.* at ___; slip op at 2. As explained in *In re MJC*:

> "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." [*In re*] *VanDalen*, 293 Mich App [120, 135; 809 NW2d 412 (2011)] (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." [*In re*] *Utrera*, 281 Mich App [1, 9; 761 NW2d 253 (2008)]. The party asserting plain error bears the burden of persuasion with respect to prejudice. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). [*In re MJC*, ___ Mich App at ___; slip op at 2.]

In *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017), the Court recognized that DHHS has an affirmative duty to make reasonable efforts to reunify the family. When an individual has a disability, the Americans with Disabilities Act ("ADA"), 42 USC 12101 *et seq.*, imposes additional obligations on DHHS to make reasonable modifications in its policies and procedures to accommodate a respondent's disability. *Id*. at 86. The Court explained:

> Absent reasonable modifications to the services or programs offered to a disabled parent, the Department has failed in its duty under the ADA to reasonably accommodate a disability. In turn, the Department has failed in its duty under the Probate Code to offer services designed to facilitate the child's return to his or her home, see MCL 712A.18f(3)(d), and has, therefore, failed in its duty to make reasonable efforts at reunification under MCL 712A.19a(2). As a result, we conclude that efforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA. [*Hicks/Brown*, 500 Mich at 86.]

The Court emphasized that DHHS's efforts at reunification will not be considered reasonable "unless [DHHS] modifies its services as reasonably necessary to accommodate a parent's disability," and that "termination is improper without a finding of reasonable efforts." *Id*. at 90.

Petitioner clearly stated in respondent's updated treatment plan that it would provide respondent with services through the Neighborhood Services Organization ("NSO") to address her low cognitive functioning. At the February 22, 2022 termination hearing, however, the caseworker admitted that she had reviewed respondent's treatment plan and was not aware that the court had ordered modifications in 2019 to address respondent's low cognitive function. Although the caseworker summarized the many services that respondent was offered, there was no testimony explaining (1) what services were offered to support respondent's low cognitive functioning, or (2) what specific services, if any, were offered by NSO. Our review of the confidential file and the foster care reports also fails to disclose what services NSO provided to respondent, if any. Because the record does not disclose that respondent was provided with specialized services designed to accommodate her low cognitive functioning, respondent has established a plain error

in this regard. However, appellate relief is warranted only if the plain error also affected respondent's substantial rights, meaning that it affected the outcome of the proceedings. *In re MJC*, ___ Mich App at ___; slip op at 2.

To successfully claim a lack of reasonable efforts, a respondent must establish that he or she would have fared better if the petitioner had offered other services. See *In re Fried*, 266 Mich App 535, 543; 702 NW2d 192 (2005). Although it appears that petitioner did not provide specialized services to address respondent's low cognitive functioning, the record discloses that respondent was provided myriad other services throughout this case, including several personalized services. The services included parenting classes, both in a group setting and one-on-one classes, a parent partner, mental health services, both individual and family therapy, and visitation with her children. Moreover, she was given an extraordinary amount of time—more than five years—to participate in services and achieve reunification. And even when it was determined that respondent failed to benefit from a service, she was afforded opportunities to repeat that service. The primary reason respondent's parental rights were terminated was because she refused to participate in or complete many services, and she eventually ceased all contact with petitioner and failed to participate in visitation after June 2021. Under these circumstances, as a "chronically noncompliant" respondent who failed to participate in and benefit from many other services, any claim that DHHS failed to provide specialized services for respondent's low cognitive level is legally deficient because respondent is unable to demonstrate a reasonable probability that she would have successfully attained reunification had that additional service been provided. *In re MJC*, ___ Mich App at ___; slip op at 7-9. Accordingly, respondent is not entitled to appellate relief.

### III. BEST INTERESTS

Respondent next argues that the court erred by finding that termination of her parental rights was in the best interests of the children, including by failing to consider a guardianship in lieu of terminating her parental rights.

A trial court's decision whether termination of parental rights is in a child's best interests is reviewed for clear error. *In re Atchley*, 341 Mich App at 346. A finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. *In re Keillor*, 325 Mich App at 85.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). Whether termination of parental rights is in a child's best interests must be proved by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). At the best-interest stage, the focus is on the child, not the parent. *Atchley*, 341 Mich App at 346. When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors, including

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in

care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015) (quotation marks and citations omitted).]

When considering a child's best interests, the court is also required to consider a child's placement with a relative, which is a factor that weighs against termination. *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).

In considering the children's best interests, the trial court considered the length of time the children had been in care, their need for permanency, security, and stability, respondent's failure to make any meaningful progress throughout the duration of the case, and respondent's lack of commitment to achieving reunification, including her failure to attend the termination hearing. Although JSM had expressed a desire to live with respondent, the court concluded that this was not a realistic option considering that the child was 11 years old and has been in care approximately half her life, and that respondent was not participating in services and had not even seen JSM since June 2021. The court observed that all of the children were in relative placement where their needs were being met, and found that they had waited far too long and were in need of permanency and stability, which respondent had not demonstrated an ability or willingness to provide.

We reject respondent's argument that the trial court erred by failing to consider a guardianship in lieu of terminating her parental rights. A trial court is not required to establish a guardianship if it is not in a child's best interests. See *In re Mason*, 486 Mich 142, 168-169; 782 NW2d 747 (2010). "[T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *In re TK,* 306 Mich App 698, 707; 859 NW2d 208 (2014) (citation omitted). A guardianship may be appropriate when "an ongoing relationship with [the parent]—rather than termination—is in the children's best interests." *In re Mason*, 486 Mich at 169.

The record indicates that throughout the lower court proceedings, the parties and the court considered and explored the option of a guardianship for the children, who were all in place with relatives. However, petitioner advised the court that the relative caregivers were not interested in a guardianship arrangement. By the time of the termination hearing, three of the children had been in care for 5½ years, and the four other children had been returned to their fathers for brief periods, only to be removed again later. None of the children had been in respondent's care since October 2016.

Respondent cites *In re Affleck/Kutzleb/Simpson*, 505 Mich 858 (2019), in support of her argument that the trial court erred by failing to consider the option of a guardianship. In that case, the Supreme Court remanded the case to the trial court for reconsideration of the children's best interests where petitioner did not recommend a guardianship on the basis of a policy that disfavored guardianships for children under the age of 10. The Supreme Court stated:

Absent contrary statutory language, such a generalized policy is inappropriate. On remand, the trial court shall address whether guardianship is appropriate for KPA

and BEK as part of its best-interest determinations without regard to a generalized policy disfavoring guardianship for children under the age of 10. [*Id.*]

See also *In re Timon*, 501 Mich 867 (2017).

Here, there is no indication that the trial court declined to consider a guardianship option because of any policy related to the children's ages. Rather, the record indicates that the trial court's decision to terminate respondent's parental rights and not pursue a guardianship option was influenced by three primary factors. First, none of the relative caregivers were interested in a guardianship arrangement. Second, the court found that a guardianship was not practical because respondent had not demonstrated any commitment to planning for or reunification with her children. Third, the court considered the length of time the children had been removed from respondent's custody—approximately 5½ years—and found that the children were in need of permanency and stability, which a guardianship would not provide, particularly considering respondent's lack of commitment to reunification. All of the children, except for SRM, had been in relative care for more than half their lives, respondent had not made any meaningful progress toward reunification, and by the end of the proceedings she was not demonstrating any interest in reunification or a commitment to maintaining a relationship with her children. Considering all the evidence, the trial court did not clearly err by finding that termination of respondent's parental rights, rather than a guardianship, was in the children's best interests.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray